**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARY GONZALES,

    Petitioner,

v.                                                                                        No. 1:24-cv-0879 KWR-KK
                                                                                              1:19-cr-0240 KWR-KK

UNITED STATES OF AMERICA,

    Respondent.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Petitioner Mary Gonzales's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 214) (Motion), (CV Doc. 11) (Supplement).   Gonzales is incarcerated and proceeding *pro se*.   She asks the Court to vacate her conviction based on four claims for ineffective assistance of counsel.   The United States responded (CV Doc. 15), and Gonzales filed a reply (CV Doc. 16).   Having reviewed the record and applicable law, the Court will dismiss the Motion with prejudice and deny a certificate of appealability.

**BACKGROUND**

On June 7, 2018, Detective (Det.) Richard Lopez, an impact detective for the City of Socorro, New Mexico, arrested Gonzales after he received a tip from a confidential informant that she would be delivering narcotics to a specific location.   (CR Doc. 84).   After witnessing what he believed to be a drug transaction, Det. Lopez initiated a traffic stop against Gonzales and searched her vehicle.   (CR Docs. 84, 181).   Det. Lopez found methamphetamine, heroin, a firearm, ammunition, a scale, and a pipe used for smoking methamphetamine.   (CR Doc. 181).   *See also* Transcript of Proceedings, Jury Trial ("Trial Tr.") Vol. II, 208:l-16; 209-228.

On September 10, 2020, a grand jury returned a four-count Second Superseding indictment against Gonzales, charging her with possession with intent to distribute 50 grams and more of methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A) (Count 1); possession with intent to distribute a mixture and substance containing detectable amounts of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2); felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count 3); and carrying a firearm during and in relation to a drug trafficking crime and possession in furtherance of such crime in violation of 18 U.S.C. § 924(c) (Count 4).   (CR Doc. 122) (Second Superseding Indictment).

A jury trial commenced on March 8, 2021 and concluded on March 10, 2021.   (CR Docs. 170-72) (Trial Tr.).   The jury returned a verdict finding Gonzales guilty of all four drug and firearm-related counts.   (CR Doc. 167) (Verdict Form).   Gonzales was sentenced to a term of 120 months as to Count 1; a term of 15 months as to each of Counts 2 and 3, with the terms running concurrently; a term of 60 months as to Count 4, with the term running consecutively to each of Counts 1, 2 and 3, for a total term of 195 months.   (CR Doc. 190) (Judgment).

Gonzales appealed her conviction and raised three issues: 1) this Court should have suppressed her incriminating statements to Det. Lopez regarding her possession of drugs because they were made prior to her handcuffing and before she was read her *Miranda* rights, (2) the physical evidence derived from those statements also should have been suppressed, and (3) 18 U.S.C. § 922(g)(1) required a greater showing than that the firearm had crossed state lines, or that Congress exceeded its Commerce Clause authority by enacting § 922(g)(1).   (CR Doc. 192).

On December 16, 2022, the United States Court of Appeals for the Tenth Circuit affirmed Gonzales's conviction and sentencing.   *United States v. Gonzales*, Case No. 21-2099, 2022 WL 17725388 (10th Cir. 2022).   On October 2, 2023, the Supreme Court of the United States denied

Gonzales's petition for writ of certiorari. *Gonzales v. United States*, 144 S. Ct. 114, 217 L. Ed. 2d 34 (2023).

Gonzales filed the instant Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 seeking to vacate her conviction and sentence. (CV Doc. 1; CR Doc. 214). The Motion asserts four grounds for relief:

> (Claim 1): Exculpatory evidence known to the Government was not disclosed and her attorney failed to investigate whether the Government complied with its disclosure requirements under *Brady*;
>
> (Claim 2): Her attorney failed to subpoena video footage taken on the date of her arrest from Det. Lopez's dash camera;
>
> (Claim 3): Her attorney did not impeach Det. Lopez's testimony by introducing a map showing where the alleged drug transaction took place; and
>
> (Claim 4): Her attorney failed to contest the chain of custody for the confiscated methamphetamine and firearm, which were both admitted at trial.

(CV Doc. 1 at 4-8; CR Doc. 214 at 4-8). Gonzales filed a supplement to her Motion with additional support for her four claims. (CV Doc. 11). The Government filed a response to Gonzales's Motion, asserting her grounds for relief were either legally foreclosed, barred by procedural default, or factually incorrect. (CV Doc. 15). Gonzales submitted a reply. (CV Doc. 16).

## DISCUSSION

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

3

Because Petitioner is proceeding *pro se*, the Court will liberally construe her pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve her of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### A. Ineffective Assistance of Counsel

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir.

2001) (citing *Strickland*, 466 U.S. at 693).   The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

### 1.   Failure to Obtain *Brady* Material from the Government

In her first ground for relief, Gonzales makes two separate arguments.   First, she states she has "reason to believe" the Government was in possession of "*Brady* material or otherwise exculpatory material" related to Det. Lopez's credibility and failed to produce it to the defense; and (2) her attorney should have discovered the *Brady* material "with adequate investigation."   (CV Doc. 1 at 4).   In support, she points to *United States v. Arvizo*, No. 1:20-CR-00329 KWR, 2022 WL 1136773 (D.N.M. Apr. 18, 2022), an unrelated case adjudicated after her conviction and sentence, wherein Det. Lopez was found to have knowingly or recklessly disregarded the truth in preparing an affidavit.   *Id.*   Gonzales shares her belief that Det. Lopez was asked to resign after the *Arvizo* matter, which suggests to her that he had a history of being an unreliable affiant, and evidence of those issues would have undermined his credibility as a witness in her case.   *Id.*

The Government filed a Response arguing that no *Brady* violation could have occurred in relation to the *Arvizo* case because the Order to which Gonzales refers was filed on April 18, 2022, more than one year after she was convicted on March 10, 2021.   (CV Doc. 15 at 5-6).   Thus, the Government reasons it could not have disclosed, and defense counsel could not have obtained, a judicial decision or records that did not exist at the time of her trial.   *Id.*   Additionally, the Government highlights that Gonzales failed to raise the *Brady* issue on direct appeal, which procedurally bars her from bringing it in the instant § 2255 Motion.   *Id.* at 6-7.

In her Reply, Gonzales admits the order in *Arvizo* was released after her conviction and was the "first court record of [Det.] Lopez's misconduct," but she claims it "was not the first documented incident of [his] wrongful conduct when testifying in his career." (CV Doc. 16 at 3). She suggests the "Department of Internal Affairs for Socorro County's Sheriff's Department investigations involving [Det.] Lopez would provide full proof for this Court's governing decisions." *Id.* She does not, however, point to a specific record or affirmatively state that the prosecution had any such records in its possession. As to the procedural bar, Gonzales argues that she should be excused because her attorney failed to raise the *Brady* claim on direct appeal.

The Court will first address the alleged *Brady* violation by the Government. To succeed on such a claim, Gonzales must prove that the prosecution suppressed or concealed evidence, the evidence was favorable to the defense, and the evidence was material. *Brady v. Maryland*, 373 U.S. 83 (1963). *See also United States v. DeLuna*, 10 F.3d 1529, 1534 (10th Cir. 1993). The Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. *Giglio v. United States*, 405 U.S. 105, 153-54 (1972). A *Brady* claim fails, however, if the existence of favorable evidence is merely suspected. That evidence exists must be affirmatively established by the defendant. *See United States v. Lopez*, 372 F.3d 1207, 1209-11 (10th Cir. 2004) (because defendant failed to establish that the government had promised leniency to prosecution witnesses, there could be no *Brady* violation in government's failure to turn over documentation of such promises); *United States v. Warren*, 454 F.3d 752, 759 (7th Cir. 2006) (defendant failed to establish existence of any document withheld by government, so "his *Brady* claim fails to get off the ground."). The defendant must also show that the favorable evidence was in the possession or control of the government. *United States v. Gardner*, 244 F.3d 784, 788 (10th Cir. 2001). *See*

6

*Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Maldonado-Rivera*, 489 F.3d 60, 67 (1st Cir. 2007) ("For *Brady* to operate, the government not only must know about undisclosed evidence but also must have custody or control of that evidence."). "The essence of the *Brady* rule is that nondisclosure of material, exculpatory evidence violates a defendant's due process right to a fair trial." *United States v. Kennedy*, 29 F. Supp.2d 677, 680 (internal citation omitted), *cert. denied*, 225 F.3d 1187 (10th Cir. 2000).

Here, Gonzales has not made a colorable showing of a *Brady* violation. The *Brady* violation argument is flawed because Gonzales cannot identify specific material evidence that existed at the time of her trial, which the prosecution had in its possession and withheld. Instead, she merely speculates that the Department of Internal Affairs for the Socorro County Sheriff's Department had "internal investigative reports" regarding Det. Lopez's credibility. *See* (CV Doc. 1 at 4; CV Doc. 16 at 3-4). While it is true that during her August 26, 2020 suppression hearing, Gonzales's attorney explored whether Det. Lopez's probable cause affidavit was consistent with his body camera video from the date of her arrest (CR Doc. 89 at 33-34, 41-51), nothing in the record suggests the Government was withholding evidence related to her attorney's attempt at impeachment. Although Gonzales states she has reason to believe *Arvizo* "was not the first documented incident of [his] wrongful conduct when testifying in his career," she does not provide a non-conclusory basis for this assumption. Because the existence of "internal investigative reports" related to Det. Lopez's behavior is merely suspected to have existed at the time of her trial, and Gonzales has not shown that any such evidence was in the possession or control of the prosecution, the Court concludes that Gonzales has not satisfied her burden to demonstrate a *Brady* violation.

The Court also rejects Gonzales's second argument that her counsel provided ineffective assistance for failing to adequately investigate and discover the alleged *Brady* material as she has shown neither deficient performance nor prejudice. Without any evidence beyond Gonzales's own "belief" that the Government possessed this evidence, the Court cannot find that the Government violated its *Brady* obligation or that counsel demonstrated deficient performance by failing to investigate hypothetical evidence. *Strickland*, 466 U.S. at 688. Moreover, without any indicia that this evidence existed, counsel's failure to investigate does not create "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because Gonzales's *Brady* arguments are meritless, the Court will not review the Government's position on procedural default. *See e.g., United States v. Aragon*, No. CR 99-1329 LH, 2002 WL 35650078, at *1 (D.N.M. Feb. 19, 2002) (no requirement to analyze procedural default if the grounds for a motion to vacate under Section 2255 are meritless) (citing *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994) ("We need not address whether [procedural default] bars appellant from asserting his *Brady* claim because, even assuming it is not procedurally barred, the claim fails on its merits.").

### 2. Failure to Subpoena Camera Footage from Det. Lopez's Patrol Vehicle

In her next ground for relief, Gonzales argues her counsel was ineffective for failing to obtain the dash camera footage from Det. Lopez's patrol vehicle on the date of her arrest. (CV Doc. 1 at 5). She indicates this video evidence would have discredited Det. Lopez's testimony regarding where he was surveilling her at the time of the drug deal and his route prior to pulling her over. *Id.* In response, the Government represents that no such footage could have been obtained by her counsel because Det. Lopez's patrol vehicle was not equipped with a dash camera

and, in preparation for trial, the Government confirmed this fact to the defense.   The Government's representation, while not in the form of an affidavit, is offered by an officer of the Court and the Court accepts it as credible for purposes of this Order.   Thus, in light of the Government's Response, the Court cannot find deficient performance or prejudice because an attorney cannot be deemed ineffective for failing to discover evidence that did not exist.   *See United States v. Michael*, No. CR 06-1833 MCA, 2012 WL 12973125, at *2 (D.N.M. Dec. 31, 2012) ("[T]he United States pointed out that it was not clear that the tapes ever existed.   Even if [the evidence is] pertinent, one cannot produce something that does not exist.").

### 3.    Failure to Introduce a Map into Evidence

In her third ground for relief, Gonzales argues her counsel was ineffective for failing to "present[] a map of the area to show the court all of the different places De[t]. Lopez[] allegedly was watching [her] from."   (CV Doc. 1 at 7).   She contends that a "Google Earth Map" of the "area of crime in question" would have cast reasonable doubt as to her guilt because the visual aid would have shown his line of sight was blocked.   (CV Doc. 1 at 7; CV Doc. 16 at 4).   In other words, Gonzales asserts her counsel was ineffective for failing to properly cross-examine Det. Lopez regarding his testimony that he actually witnessed a drug transaction occur between Gonzales and another individual.

A review of the trial transcript shows that Gonzales's attorney did cross-examine Det. Lopez regarding where he was located during his surveillance.   (CR Doc. 171 at 38-45) (Trial Tr.). During cross-examination, Gonzales's attorney was able to elicit testimony from Det. Lopez that he could not remember where he was when he first saw Ms. Gonzales's truck on the day of the arrest.   *Id.* at 40-41.   In fact, when Det. Lopez testified at trial that he first saw her truck on Lopezville Road while he was driving behind her, Gonzales's attorney was quick to highlight that

9

he previously testified to being parked on a ditch bank when he first saw her truck. *Id.* at 38-41. She was also able to elicit testimony from Det. Lopez that he was looking through the gap of a wooden picket fence approximately 40 to 50 yards away from the alleged drug transaction. *Id.* at 42. Det. Lopez admitted he did not actually witness Ms. Gonzales get out her vehicle, nor did he see her exchange drugs for money. *Id.* at 45.

To satisfy *Strickland*'s first prong of deficient performance, Gonzales "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997). "For counsel's actions to rise to the level of constitutional ineffectiveness, [her] strategic decisions must have been 'completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy.'" *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)). Gonzales has not met this burden. The decision to not use a "Google Earth Map" of the "area of crime in question" when cross-examining Det. Lopez clearly relates to trial strategy. *See United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (quoting *United States v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983)) ("Counsel's selection of questions is a matter of 'strategic choice,' as to which [she] has broad latitude."). Gonzales has not alleged facts with regard to Det. Lopez's cross-examination that trial counsel acted unreasonably. The transcript reveals that the cross-examination of Det. Lopez was lengthy, thorough, and designed to reveal inconsistencies in his testimony and doubt as to whether he actually witnessed a drug transaction.

Rather, "Petitioner is engaging in precisely the sort of 'Monday-morning quarterbacking'

10

that is impermissible when trying to determine whether trial counsel's performance was deficient."

*United States v. Porter*, No. 10-CR-3404 RB, 2015 WL 13650112, at *4 (D.N.M. Oct. 26, 2015),

*report and recommendation adopted*, No. 10-CR-3404 RB, 2015 WL 13650113 (D.N.M. Nov. 23,

2015) (citing *Valdez v. Winans*, 738 F.3d 1087, 1091 (1984)).   At most, Gonzales argues she would

have preferred a different course of questioning regarding Det. Lopez's surveillance.   However,

such a preference is not the standard for constitutionally deficient performance under the first prong

of *Strickland*.

Although the Court need not address the second prong of the *Strickland* test since Gonzales

has made an insufficient showing on the first, it is further clear from the Tenth Circuit's

determination, which affirmed her conviction and sentence, that she would be unable to establish

prejudice as the Government has brought "overwhelming" evidence to establish her guilt:

> In considering the properly admitted evidence of guilt, we note that the government provided overwhelming proof of Gonzales's intent to distribute the methamphetamine and heroin.   The government admitted into evidence the drugs and the revolver and elicited testimony from Deputy Lopez and the FBI agent. Deputy Lopez testified that based on his inside information and his own perception, he believed that Gonzales had conducted a hand-to-hand drug transaction with Soto-Paz and that he confirmed this belief when he seized the drugs, scale, and firearm from Gonzales's truck.   He testified that digital scales are often used by dealers to weigh drugs.   Next, the FBI agent testified that in his experience, the quantities of methamphetamine and heroin seized were more consistent with distribution than personal use.   He told the jury that the methamphetamine was highly pure, meaning it could be diluted into hundreds of doses, and that Gonzales possessed at least forty-nine doses of heroin.   The agent also corroborated Deputy Lopez's testimony about digital scales being used by drug dealers.   And he testified that drug dealers use firearms to protect themselves from being robbed.

*United States v. Gonzales*, 2022 WL 17725388, at *5 (10th Cir. 2022).

### 4.    Failure to Address Chain of Custody Issues

In her fourth ground for relief, Gonzales argues her counsel was ineffective for failing to

address chain of custody issues with the seized methamphetamine and firearm.   (CV Doc. 1 at 8).

Gonzales finds it suspicious that "48 grams of meth [was] tested one day, then 2 days later another 10 grams were tested," and "the gun [was not] admitted into the chain of custody until 6 months later." *Id.*

As the Government points out in its Response, Gonzales's ineffective assistance argument cannot stand because her counsel did not fail to litigate the chain of custody issues. Rather, once the Government rested its case at trial, Gonzales's attorney explicitly sought a direct verdict based on chain of custody concerns:

> Your Honor, first of all, with respect to the counts related to methamphetamine and heroin, Your Honor, the problem we have here, the United States has not met its burden of putting on competent evidence that the items that were seized and the items that were tested were one and the same thing. We heard testimony from Agent Lopez, for example, that he had seized certain items, and he testified that he took four small bags of meth, another bag of meth, and then a container of heroin.

> And, Judge, those were then -- as far as the evidence presented at trial, they sort of go into a black hole until we get to the DEA Laboratory. And then the DEA Laboratory, they, of course, the scientists, explained both about the heroin and the meth, that they had procedures in place to assure that there was integrity and traceability of these items and that they followed those. But the government did not put on any evidence to link up from Agent Lopez to the crime lab, Judge.

> And we do know that those drugs changed hands, or the items that they claim went from Lopez to the drug lab changed hands various times. They went from -- according to the chain of custody paperwork that the government has disclosed, they went from Lopez, to someone else in Lopez's office, to the Sheriff's Office in Socorro County, with Sheriff William Armijo. And then in August, on August 22, 2018, so a couple of months later, they are then put into the hands of Agent Milliken, and then Agent Milliken sends them off for -- we don't actually know. There's no evidence. But with respect to the drugs, all we know from the laboratory chemists is that they had them and they got them; they don't know from whom.

> So there is no evidence that it's the same items that were seized by Lopez, with respect to all of the drug evidence that the drug chemists tested. And it's also notable that the drug chemist related to the methamphetamine stated that they completely change; when they're testing something, it doesn't look like the thing that they got. It changes what it looks like after they test it.

12

So to the extent that Agent Lopez looked at it and said, "This was the same thing I sent over," the fact of the matter is, it's not the same thing.   They've testified they changed its composition.

And so, Judge, I would move for a directed verdict on the basis of insufficient evidence on the drugs.

And then, Judge, with respect to the 922(g) and the 924(c) charge, first of all, a similar chain of custody issue with the gun and the ammunition, that it goes into a black box.   And then Agent Acee gets this gun, and he testified that he tested it, but he is not able to testify and disclaims any opinion about its condition or the state of it before it was in the FBI office, the Evidence office.   Same thing goes for the ammunition.

(CR Doc. 203 at 129-31) ("Trial Tr."").   Additionally, on April 7, 2021, Gonzales, through her attorney, filed a Motion for a New Trial.   (CR Doc. 173).   Within, her attorney again identified the chain of custody issues and requested that the jury's verdict be vacated.

While Gonzales argues that his counsel failed to challenge the chain of custody, the trial record, as cited above, indicates otherwise.   Thus, counsel was not ineffective as she did, in fact, challenge the chain of custody of the seized methamphetamine and firearm.   These facts demonstrate that counsel's performance was not legally deficient, and Gonzales was not prejudiced.

### B.   A Certificate of Appealability Will Be Denied

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of appealability requires "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   For the reasons explained above, the Court finds that reasonable jurists

13

could not debate the denial of Gonzales's § 2255 motion and, therefore, a certificate of appealability will be denied.

**IT IS ORDERED** that Petitioner Mary Gonzales's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 214) (Motion) is **DISMISSED with prejudice**; a certificate of appealability is **DENIED**; and a separate judgment will be entered closing the civil case.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

14